JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Samiyah Gaddy

## DEFENDANTS
EBIN NEW YORK, LLC
JOHN PARK, and JAE YOUNG CHOI

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bergen County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Austin D. Skelton, Esq.
The Lacy Employment Law Firm LLC
2564 Brunswick Pike Lawrenceville, NJ 08648
(609) 900-4053

Attorneys *(If Known)*
John P. Mueller, Esq.
Marshall Dennehey - (t) (856) 414-6000
15000 Midlantic Drive, Suite 200, P.O. Box 5429, Mount Laurel, NJ 08054

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981

Brief description of cause:
A Korean owned beauty company racially discriminated and retaliated against one of its only Black employees.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $10,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: June 11, 2024
SIGNATURE OF ATTORNEY OF RECORD: /s/ Austin D. Skelton, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: [Nature of Suit Code Descriptions](Nature of Suit Code Descriptions).

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**SAMIYAH GADDY,**

　Plaintiff

　v.

**EBIN NEW YORK, LLC;**
**JOHN PARK; JAE YOUNG CHOI,**

　Defendants.

:

CIV. ACTION NO.

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, Samiyah Gaddy, by way of Complaint against the Defendants, Ebin New York, LLC, John Park, and Jae Young Choi, alleges as follows:

**PRELIMINARY STATEMENT**

There is nothing real about Ebin New York. Ebin "New York" is not even located in New York, it is located in New Jersey, which is just one instance of how it intentionally misleads its target audience. It markets to Black American women. Yet it refuses to allow Black American women to have a seat at the table. Ebin is a Korean company that pillages the Black community for its buying power but refuses to empower the miniscule number of Black employees that it employs. Ebin's mistreatment of Ms. Gaddy compared to its treatment of her Korean colleagues was callous and exemplified the actions of a colonizer by curating Black influencers like Ms. Gaddy to maximize profit in the Black community without any recognition or respect. Ebin put out a statement on its website to placate the Black community, but it has not apologized to Ms. Gaddy who – because of Ebin's leadership – lost her employment, her apartment, and has been

1

targeted by racism on social media in the aftermath of telling ***her truth*** on Tik Tok. Ebin bases its business model off pretending to be a friend to the Black community; it is not. All Black women are to Ebin is a "venture" off of which Ebin can "capitalize."

In contrast to the falsehoods that Ebin perpetuates, like the statement below, Ms. Gaddy has the truth.

**STATEMENT FROM EBIN**

Our company and its leadership at EBIN take great pride in treating all of our employees fairly and creating an equitable work environment.

We are taking steps to reaffirm our commitment to an inclusive workplace that values, supports and celebrates our diverse workforce.

*Ebin's Statement From Its Website*

Indeed, as demonstrated below, Ms. Gaddy has receipts. She contemporaneously documented her experience on Tik Tok, which has received over 2.9 million views and counting.



But she does not just rely on telling her story on social media. To the contrary, Ms. Gaddy litters this Complaint with screenshots demonstrating that Ebin ostracized the only Black female in its corporate department. Ebin excluded her from meetings. Ebin's employees intentionally spoke Korean – despite being well-versed in English – to ensure that Ms. Gaddy could not contribute in the workplace. Ebin sent Ms. Gaddy – while she was alone in Atlanta – to a low rated hotel while its other employees enjoyed high-class accommodations.

As a Korean co-worker noted to Ms. Gaddy, Ebin is filled with racist "mfs." The law, since the passage of Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. §§ 2000e to 2000e-17, bars discrimination based on race in the workplace. That was true in 1964. It is still true in 2024.

Ms. Gaddy demands all relief available under the law, including a judgment in excess of 10 million dollars for her pain, suffering, and to punish Ebin for its intentional violation of Ms. Gaddy's – and others' – civil rights.

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution, particularly under the following provisions.

2. 42 U.S.C. § 1981 authorizes original jurisdiction in this case. This Court possesses federal question jurisdiction for this case under the provisions of Title 28 of the United States Code, §1331 and §1343.

3. The District of New Jersey is the appropriate venue under Title 28 U.S.C. §1391(b)(2) because all substantial parts of the events, or in some instances, omissions, giving rise to the claims occurred in this District.

4. Ebin New York is located in Bergen County, New Jersey. Bergen County, which is the location of the occurrence and all relevant events occurred, is located in Northern Middlesex County, north of the Raritan River. Venue is proper in the Newark Vicinage of the United States District Court for the District of New Jersey.

5. This Court has supplemental jurisdiction over Plaintiff's joined state law claims under the New Jersey Laws Against Discrimination ("NJLAD") pursuant to 28 U.S.C. § 1367.

## PARTIES

6. Plaintiff, Samiyah Gaddy, is an African American female who resides in the State of New Jersey.

7. Upon information and belief, Defendant Ebin New York, LLC is a New York limited liability company with its principal place of business located at 5 Empire Blvd, South Hackensack, New Jersey 07606.

8. Upon information and belief, Defendant John Park is the CEO of Ebin New York, LLC and resides in the State of New Jersey.

9. Upon information and belief, Defendant Jae Young Choi is an employee of Ebin New York, LLC, Ms. Gaddy's former supervisor, and resides in the State of New Jersey.

## FACTS

10. Ms. Gaddy began her employment with Defendant Ebin New York, LLC on or about August 9, 2023, as a Social Media Marketer.

11. Ms. Gaddy was the only African American employee working in a corporate position at Ebin New York, LLC.

12. From the beginning of her employment, Ms. Gaddy was subjected to disparate treatment and a hostile work environment on the basis of her race.

13. On August 14, 2023, the entire marketing team left the office for a meeting in New York without informing Ms. Gaddy, despite telling her the previous day that they would be going together.

14. Ms. Gaddy's co-workers would regularly speak in Korean in front of Ms. Gaddy, excluding her from conversations and meetings. Even the CEO, John Park, routinely came into the marketing room and spoke only in Korean.

15. On September 7, 2023, Ms. Gaddy observed her co-workers Yejin and JiWon laughing and speaking in Korean. When Ms. Gaddy showed confusion, Yejin said they were talking about a fly on Ms. Gaddy's computer monitor, which made Ms. Gaddy feel targeted and alienated.

16. At a company event in Atlantic City on October 6, 2023, JiWon approached Ms. Gaddy only to dismiss her concerns about feeling alienated by stating, "You wouldn't understand, I'm Korean," and walked away, further alienating Ms. Gaddy from her colleagues. JiWon certainly did not make life easy for Ms. Gaddy.



17.     In the above exchange, Woosung Yang, who is of Korean descent and a former employee at Ebin, informed Ms. Gaddy that he doesn't know what's up with these Korean people . . . "mfs' [motherfuckers] are racist" . . . Woosung Yang was referring to Ebin's leadership, Ms. Gaddy's supervisors, and the environment at Ebin when he referred to "Korean people" as racist. Specifically, the word racist was referring to the leadership team and supervisors at Ebin.

18.     Brandon Bae, another colleague, made a racially insensitive remark referring to two African American women contractors as Ms. Gaddy's "grandmothers," demonstrating the casual racial stereotyping and harassment present in Ebin's workplace.

19.     Ms. Gaddy's supervisor, Jae Young Choi, explicitly engaged in racial profiling by asking Ms. Gaddy to screen a resume to see if the candidate had a "Black name," and criticized

6

Ms. Gaddy's job performance by unfavorably comparing her to a former employee of a different race suggesting that because Ms. Gaddy is Black, her performance was subpar.

20. On September 11, 2023, a co-worker called out the marketing team for taking team photos without including Ms. Gaddy. The team brushed it off and still did not take pictures with Ms. Gaddy at the event, further alienating her in Ebin's cultivation of a hostile work environment.

21. On multiple occasions, Ms. Gaddy was excluded from important marketing meetings that the rest of her team attended, with no explanation. This is evidenced by a white board that contained the names of all of Ms. Gaddy's Korean co-workers. Ms. Gaddy's name, however, is nowhere to be found.



22. In November 2023, Ms. Gaddy had to travel alone to Atlanta for a photoshoot. Her supervisor Jae Young Choi booked Ms. Gaddy a room in an unsafe, unsanitary hotel. When Ms. Gaddy called Mr. Choi to express her concerns, he rudely said the room was already booked and that he couldn't do anything and then abruptly hung up on her.



23. Notably, Ebin employees typically stayed in "nice hotels," such as Hilton Hotels & Resorts, as evidenced by the above text message exchange with another Korean coworker at Ebin, not uninhabitable hotels to which Ms. Gaddy was forced to stay by herself.

24. Mr. Choi, Ms. Gaddy's supervisor, booked her hotel at the Residence Inn by Marriott Atlanta Buckhead, a three-star hotel, from November 10, 2023 to November 13, 2023 in a standard room.

25. On September 28, 2023, a patron from the above mentioned hotel submitted a review about their stay at the hotel on TripAdvisor, nearly a month prior to Ms. Gaddy's stay. The below review accurately summarizes the horrid conditions to which Ms. Gaddy was subjected to:

8



**Unsafe & unclean Better stays in 3rd world Countries**

Review of **Residence Inn by Marriott Atlanta Buckhead**

●●○○○  Reviewed Sep 28, 2023

DiningwithDolls T

Let me start by saying we have been on the road since July in Dominican Republic, Costa Rica & Mexico (just stayed at residence inn Cancun and had an amazing experience) Residence Inn Buckhead is the worst place we've stayed for the entire trip. This place is awful. We still have a few nights left but I'm going to try to leave and book somewhere else.
First of all, the premises seems very unsafe. When we arrived back to the hotel tonight, we were entering our room when a very strange man kind of popped up on us and started approaching us. We quickly got into our room but feel very uneasy now. Also, a lot of cars with occupants that obviously aren't staying here, "linger" in the parking lot at all hours. Just feel very unsafe in general. We felt safer in Santo Domingo, DR…
On top of that, the room has a terrible old musty smell to it. The towels smell musty and unclean, the kitchen floor is sticky. Your shoes stick like it's an old dirty bar or stadium. the whole place just feels dirty. Do not recommend. Very very disappointed

More

**Date of stay:** September 2023

26. On January 11, 2024, the CEO of Ebin, John Park, abruptly stopped a company-wide meeting, called out Ms. Gaddy's name, pointed to the door, and told her to get out in front of everyone. Ms. Gaddy left the room crying and embarrassed. When she later asked Mr. Park if they could talk about what happened, he said "I don't need to speak to you man!" and walked away.

27. Throughout her employment, Ms. Gaddy made numerous complaints to Human Resources about the discriminatory treatment she was experiencing. Ms. Gaddy's first complaint to Human Resources about her mistreatment relative to her Korean coworkers treatment was made on November 16, 2023, less than two months before her unlawful termination. However, nothing was done to remedy the situation. Ms. Gaddy could not have been more thorough:

9

[Screenshot of email to Beatriz Caldalda listing 17 numbered incidents of discrimination dated 8/14 through 11/15]

*Incidents of Discrimination that Ms. Gaddy Reported to Ebin*

28. Ms. Gaddy attempted to reach out and file a "formal complaint."



[Screenshot of text message sent to David Yoon: "Filing a Formal Complaint. Dear David, I am writing to formally file a complaint regarding racial discrimination and a hostile work environment at EBIN New York. The incidents I've experienced have created an untenable situation, impacting my ability to work effectively."]

29. Instead of investigating the complaints of discrimination, Ebin notified Ms. Gaddy that she was receiving a warning for ***her insubordination***.

10



30. Ironically, Ebin stated that it strove to create an inclusive work environment.



31. Yet, as mentioned above, Ebin intentionally excluded Ms. Gaddy from meetings, chose to speak a language that she did not understand, and sent her to a second-rate hotel in Atlanta while it booked 5-star hotels for its Korean employees.

32. On January 12, 2024, Ms. Gaddy was suddenly terminated by Human Resources. They refused to discuss the incident with CEO John Park the previous day, and instead said she was being fired for "KPI performance" without ever having provided Ms. Gaddy with any KPI feedback or evaluation.

33. Ms. Gaddy had never received any prior warnings or discipline for her job performance. She believes the stated reason for her termination was pretext and that she was actually fired in retaliation for her complaints of race discrimination and harassment to Ebin's Human Resources personnel.

34. After Ms. Gaddy sent an email to her colleagues informing them of her wrongful termination, she began receiving hateful messages from fake social media accounts, using racial slurs and insults.





35. Ms. Gaddy received the above comments on her Instagram account on the same day she was terminated. At the time, Ms. Gaddy had not made any posts to social media about her wrongful termination and she did not tell anyone else besides Ebin's Korean employees.

36. As a result of Defendants' unlawful conduct, Ms. Gaddy has suffered severe emotional distress, mental anguish, humiliation, and monetary damages.

### COUNT ONE (Race and National Origin Discrimination - NJLAD)

37. Ms. Gaddy repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

38. Defendants are employers within the meaning of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -49.

39. Ms. Gaddy is a member of a protected class (African American) under the NJLAD. Ms. Gaddy is also a United States citizen.

40. Defendants subjected Ms. Gaddy to disparate treatment and a hostile work environment on the basis of her race and national origin, including excluding her from meetings and conversations, making derogatory comments, and denying her equal terms and conditions of employment, in violation of the NJLAD.

41. Defendants are vicariously liable for the actions of Ms. Gaddy's supervisors and co-workers who participated in the discriminatory conduct.

42. As a direct and proximate result of Defendants' unlawful discrimination, Ms. Gaddy has suffered and will continue to suffer emotional distress, lost wages and benefits, damage to her career and reputation, and other damages.

### COUNT TWO (Harassment - NJLAD)

43. Ms. Gaddy repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

44. Defendants subjected Ms. Gaddy to severe and pervasive race-based harassment, which created a hostile work environment in violation of the NJLAD.

45. The discriminatory conduct was unwelcome and occurred because of Ms. Gaddy's race.

46. The harassment was severe and pervasive enough to make a reasonable African American believe that the conditions of employment were altered and the working environment was hostile and abusive. Further, the harassment was severe and pervasive enough to make someone who could not speak Korean and was not of Korean descent, believe that the conditions of employment were altered and the working environment was hostile and abusive.

47. Defendants knew or should have known about the harassment, but failed to take prompt and effective remedial measures to stop it.

48. As a direct and proximate result of the hostile work environment created by Defendants, Ms. Gaddy has suffered and will continue to suffer emotional distress, lost wages and benefits, damage to her career and reputation, and other damages.

## COUNT THREE (Retaliation - NJLAD)

49. Ms. Gaddy repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

50. Ms. Gaddy engaged in protected activity under the NJLAD by making good faith complaints to Human Resources regarding the race discrimination and harassment she experienced at Ebin New York, LLC.

51. Defendants took adverse employment actions against Ms. Gaddy, including terminating her employment, in retaliation for her protected complaints of discrimination and harassment.

52. Defendants' retaliatory conduct violated the NJLAD.

53. As a direct and proximate result of Defendants' unlawful retaliation, Ms. Gaddy has suffered and will continue to suffer emotional distress, lost wages and benefits, damage to her career and reputation, and other damages.

**COUNT FOUR (Race Discrimination, Hostile Work Environment, and Retaliation - 42 U.S.C. § 1981)**

54. Ms. Gaddy hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

55. Defendants' discriminatory and retaliatory actions, as set forth herein, deprived Ms. Gaddy of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

56. Ms. Gaddy had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

57. Ms. Gaddy was an at-will employee, which implicates her right to make and enforce contracts.

58. Defendants abridged Ms. Gaddy's right to make and enforce contracts by its discriminatory conduct toward Ms. Gaddy.

59. As a result of Defendants' actions, Defendants have denied Ms. Gaddy the right to the same terms, conditions, privileges and benefits of her employment with Ebin New York LLC.

60. Defendants, by and through its supervisors, intentionally discriminated against Ms. Gaddy on the basis of her race.

61. Ms. Gaddy was a member of a protected class and was qualified for the position that Ms. Gaddy held.

62. Defendants' actions altered Ms. Gaddy's work environment.

63. The discrimination that Ms. Gaddy faced detrimentally affected Ms. Gaddy. And this discrimination would detrimentally affect a reasonable person in similar circumstances.

64. This severe and pervasive environment continued throughout Ms. Gaddy's employment with Defendants.

65. Defendants are liable for their supervisor's misconduct under respondeat superior.

66. Ms. Gaddy participated in protected conduct. Defendants retaliated against Ms. Gaddy because of her participation in protected activities.

67. There is a causal connection between Ms. Gaddy's participation in protected activities and the adverse employment action from which Ms. Gaddy suffered.

68. As a direct and proximate result of Defendants' acts and conduct, Ms. Gaddy has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

69. The wrongful acts and conduct of Defendants was done with deliberate indifference to the statutory and constitutional rights of Ms. Gaddy.

70. Ms. Gaddy suffered adverse employment consequences, specifically, Defendants retaliated against Ms. Gaddy and terminated her employment for engaging in protected activity.

71. Ms. Gaddy was terminated as a result of Defendants' racially discriminatory conduct.

72.     Ms. Gaddy is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## CONCLUSION

In conclusion, Ebin New York is anything but authentic. Despite its name, it isn't even located in New York but in New Jersey, deliberately misleading its audience. Ebin markets its products to Black American women but denies them significant roles within the company. Ebin, a Korean company, exploits the Black community for its economic power while neglecting and mistreating its few Black employees. The treatment of Ms. Gaddy, starkly contrasted with that of her Korean colleagues, was particularly egregious. Ebin leveraged Black influencers like Ms. Gaddy for profit without offering recognition or respect. Despite issuing a placating statement on its website, Ebin has not apologized to Ms. Gaddy, who lost her job, apartment, and faced social media racism after speaking out on TikTok. Ebin's business model is built on pretending to support the Black community, but in reality, it merely views Black women as opportunities for profit. Unlike Ebin's falsehoods, Ms. Gaddy has documented proof of her mistreatment, including being ostracized, excluded from meetings, and subjected to discriminatory practices.

## JURY DEMAND

Ms. Gaddy hereby demands a trial by jury on all issues so triable.

17

**DATED**: June 11, 2024

                                            */s/ Austin D. Skelton*
                                            Austin D. Skelton, Esq.
                                            **THE LACY EMPLOYMENT LAW FIRM LLC**
                                            2564 Brunswick Pike
                                            Lawrenceville, NJ 08648
                                            609-900-4053
                                            austin.skelton@employment-labor-law.com

                                            *Counsel for Plaintiff*